# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MICHAEL J. BEVERICK and CINDY ) 
M. BEVERICK, husband and wife, )      No. 74210-8-I
                                 )
          Appellants, )      DIVISION ONE
                                 )
          v. )      UNPUBLISHED OPINION
                                 )
LANDMARK BUILDING & )
DEVELOPMENT INC., and LAND )
TITLE & ESCROW COMPANY, and )
WMC MORTGAGE CORP., and )
AURORA BANK FSB, and U.S. BANK )
NATIONAL ASSOCIATION AS )
TRUSTEE for STRUCTURED ASSET )
CORPORATION MORTGAGE PASS )
CERTIFICATES, SERIES 2007-GEL1 )
60 Acct. No. 0122944200, and BISHOP )
AND LYNCH OF KING COUNTY, and )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., and )
NATIONSTAR MORTGAGE LLC, )
                                 )
           Respondents. )     FILED: July 3, 2017

TRICKEY, A.C.J. — Cindy and Michael Beverick appeal the trial court's grant of summary judgment in favor of Nationstar Mortgage LLC and other parties (collectively, Nationstar)[1] and the trial court's grant of summary judgment in favor of WMC Mortgage Corp. They argue that summary judgment was inappropriate because genuine issues of

---

[1] For clarity, Nationstar Mortgage LLC and other parties will be collectively referred to as "Nationstar." When referring to individual actions, the parties' separate names will be used.

material fact remained and that the trial court relied on improper testimony and erred in dismissing certain defendants.

No genuine issues of material fact existed because the Bevericks admitted to the authenticity of the purported original promissory note offered at summary judgment, did not offer sufficient evidence to challenge Nationstar Mortgage's status as holder of the promissory note, and did not offer sufficient evidence in support of their Consumer Protection Act, chapter 19.86 RCW, claims. The testimony challenged by the Bevericks contained facts that would have been admissible at trial as business records and the declarants offered sufficient foundation supporting their personal knowledge. The Bevericks waived their claims against Mortgage Electronic Registration Systems, Inc., Bishop & Lynch of King County, and U.S. Bank National Association. We affirm.

## FACTS

In May 2006, the Bevericks executed an adjustable rate note in the amount of $409,600 in favor of WMC Mortgage Corp. (WMC). The note was secured by a deed of trust, which identified WMC as "Lender," Bishop & Lynch of King County (Bishop & Lynch) as "Trustee," and Mortgage Electronic Registration Systems, Inc. (MERS) as "[B]eneficiary" as the nominee for WMC.[2] The deed of trust encumbered real property owned by the Bevericks. The deed of trust was recorded in May 2006.

The Bevericks did not communicate or interact with WMC during the loan application process or during the life of the loan. The Bevericks made payments on the loan to Aurora Bank, FSB (Aurora), the servicer of the loan, from closing until September 2011.

---

[2] Clerk's Papers (CP) at 64-65 (boldface omitted).

In September and October 2011, Aurora acted as the servicer of the loan and U.S. Bank National Association (U.S. Bank) as trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2007-GEL1, Account No. 0122944200 (SASCO 2007-GEL1) owned the obligation.

In December 2011, WMC transferred physical possession of the note, which was indorsed in blank, to Aurora.

In January 2012, MERS assigned its interest in the deed of trust to Aurora, which was recorded in March 2012.

In March 2012, a law firm sent the Bevericks a notice of default on behalf of the beneficiary of the loan obligation. The notice stated that the beneficiary of the obligation had declared a default based on the Bevericks' failure to pay monthly payments from October 2011 to March 2012. The notice named SASCO 2007-GEL1 as the owner of the note, and Aurora as the servicer of the obligation. A notice of trustee's sale was not issued.

In May 2012, Aurora sent a letter to the Bevericks notifying them that Aurora was the servicer of the loan and providing its address. The letter also stated that U.S. Bank was the owner of the loan, and provided U.S. Bank's address. Aurora attached a certified copy of the original note to the letter.

In June 2012, Aurora notified the Bevericks that Nationstar Mortgage was the new servicer of their loan. In July 2012, Aurora transferred the note to Nationstar Mortgage.

In August 2012, the Bevericks filed a complaint against WMC, U.S. Bank, Aurora, Nationstar Mortgage, MERS, and Bishop & Lynch, among others, seeking to quiet title, requesting cancellation of the debt, and alleging a violation of the CPA. All the defendants

moved for summary judgment, and which the court denied on September 30, 2013.

On the day of the summary judgment hearing, Michael Beverick and the Bevericks' attorney met with Adam Hughes, the attorney for the defendants, to inspect a document Huges claimed was the original note. Beverick later declared that he noticed there were several differences in appearance between the document produced and the original, and believed that the offered document was a copy printed from a color copier.

In October 2013, the defendants moved for partial reconsideration of the trial court's September 30 order. In their response, the Bevericks acknowledged that they did not have a cause of action against U.S. Bank, MERS, or Bishop & Lynch.

The trial court granted the motion in November 2013. The trial court dismissed all claims asserted against Bishop & Lynch, U.S. Bank, and MERS. The trial court held that issues of material facts remained over the authenticity of the indorsement of the note, the identity of the proper holder of the note, whether the deed of trust was authentic, and who had the authority to enforce the note.

On December 3, 2013, Nationstar Mortgage sent the Bevericks requests for admission (RFAs) asking that they admit that their original signatures were on the note produced at the September 30, 2013 summary judgment hearing and on the note shown to them by Hughes, and to admit that the blank indorsement executed by WMC on the note was authentic. The Bevericks' response was due 30 days after being served with the RFAs. The Bevericks did not respond to the RFAs until January 5, 2015, when they filed a motion to extend time to answer requests for admissions. The trial court did not grant the extension.

In May 2014, Aurora assigned its interest in the deed of trust to U.S. Bank. The assignment was recorded on May 27, 2014.

In August 2014, Nationstar Mortgage filed an amended answer, affirmative defenses, counter claim, and third party complaint for judicial foreclosure. Nationstar Mortgage claimed that it was the current holder of the note.

In March 2015, Nationstar Mortgage moved for summary judgment and a decree of foreclosure. Nationstar Mortgage offered the affidavit of A.J. Loll, Vice President of Nationstar Mortgage, and the declarations of Adam Hughes, attorney for Nationstar, and Laura McCann, Vice President of Aurora Commercial Corp., the successor entity to Aurora, in support of its motion for summary judgment and decree of foreclosure.

In May 2015, the trial court granted Nationstar Mortgage's motion for summary judgment and issued a decree of foreclosure. The trial court determined that the deed of trust was a valid, subsisting, first, prior, and paramount lien on the Bevericks' real property in favor of Nationstar Mortgage. The trial court foreclosed the real property, ordered a sheriff's sale, and awarded judgment in the principal sum of $401,323.83, prejudgment interest of $123,072.73, fees totaling $6,626.07, litigation costs of $1,997.88, and attorney fees of $2,500.

Following the trial court's grant of summary judgment to Nationstar Mortgage, the Bevericks' only remaining claim was against WMC for violation of the CPA. WMC moved for summary judgment in June 2015. The trial court granted the motion in August 2015. The trial court entered final judgment and dismissed the Bevericks' claim against WMC on October 16, 2015.

The Bevericks appeal.

5

ANALYSIS

Timeliness of Appeal

Nationstar argues that this court may not review the trial court's order granting of Nationstar Mortgage's motion for summary judgment and decree of foreclosure because the Bevericks' notice of appeal was untimely. Because the order granting summary judgment and decree of foreclosure was not a final judgment, we find that the appeal was timely.

Unless otherwise prohibited by statute or court rule, "a party may appeal from only . . . [a] final judgment entered in any action or proceeding . . . [and] [a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." RAP 2.2(a)(1), (3).

Ordinarily, a notice of appeal must be filed in the trial court within 30 days of the entry of a final judgment that the party wants reviewed. RAP 5.2(a).

When an action presents more than one claim for relief or involves multiple parties, the court may enter final judgment as to fewer than all claims or fewer than all parties only "upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment." CR 54(b). Thus, a final judgment under CR 54(b) requires:

> (1) more than one claim for relief or more than one party against whom relief is sought; (2) an express determination that there is no just reason for delay; (3) written findings supporting the determination that there is no just reason for delay; and (4) an express direction for entry of the judgment.

Nelbro Packing Co. v. Baypack Fisheries, LLC, 101 Wn. App. 517, 523, 6 P.3d 22 (2000). The factors relevant to determining whether there is no just reason for delay include:

"(1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal."

Nelbro Packing Co., 101 Wn. App. at 525 (alteration in original) (quoting Schiffman v. Hanson Excavating Co., Inc., 82 Wn.2d 681, 687, 513 P.2d 29 (1973)). The trial court must address each factor or explain why it disregarded some factors; failure to do so is an abuse of discretion. Nelbro Packing Co., 101 Wn. App. at 526.

A judgment is not final unless the court has strictly complied with this rule. Bank of America, N.A. v. Owens, 177 Wn. App. 181, 192, 311 P.3d 594 (2013). An order is not a final judgement if it adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties that does not include written findings, that determination, and that direction. CR 54(b).

This court has the authority to determine whether a matter is properly before it. RAP 7.3. This court reviews the trial court's determination that there is no just reason for delay for abuse of discretion. Nelbro Packing Co., 101 Wn. App. at 524-25.

Here, the trial court granted summary judgment in favor of Nationstar Mortgage and issued a decree of foreclosure on May 21, 2015. The Bevericks filed their notice of appeal on November 9, 2015, which included the trial court's order and decree of foreclosure.[3]

---

[3] The trial court granted WMC's motion for summary judgment and entered final judgment dismissing the Bevericks' remaining claim on October 16, 2015. The parties do not dispute that the Bevericks' appeal of this order and final judgment was timely.

The order and decree addressed all of the Bevericks' remaining claims against Nationstar. But the order and decree of foreclosure did not address the Bevericks' claim against WMC for violation of the CPA. Because more than one claim for relief was presented and multiple parties were involved, the trial court's order and decree had to satisfy CR 54(b) in order to constitute a final judgment.

The trial court stated that no just reason existed for delay in the entry of judgment in favor of Nationstar Mortgage and expressly directed that judgment was to be entered in favor of Nationstar Mortgage. But the trial court did not provide a written explanation showing it had considered the required factors for determining whether there is no just reason for delay. Rather, the trial court stated that it was relying on the oral argument of counsel and numerous documents, the affidavit, declarations, and exhibits to reach its decision.

The trial court's failure to provide written findings means that its order and decree of foreclosure was not a final judgment under CR 54(b). Therefore, the Bevericks did not need to file their notice of appeal within 30 days of its entry.

### Dismissal of MERS, Bishop & Lynch, and U.S. Bank

The Bevericks argue that the trial court erred by dismissing several of their deeds of trust act, chapter 61.24 RCW, claims against "Aurora Bank, Bishop and Lynch of King County and MERS."[4] Because the Bevericks agreed to the dismissal of those parties below and thus waived their claims against them, the trial court did not err.

The doctrine of waiver may apply to bar a party's assignment of error on appeal through that party's acquiescence to a ruling or other act of the trial judge. See, e.g.,

---

[4] Appellant's Br. at 25.

State ex. rel. LaMon v. Town of Westport, 73 Wn.2d 255, 261, 438 P.2d 200 (1968); Spokane County v. Farmer, 5 Wn. App. 25, 27, 486 P.2d 296 (1971).

In their response to the October 2013 motion for partial reconsideration, the Bevericks agreed that the facts in their complaint did not assert a cause of action against MERS, Bishop & Lynch, and U.S. Bank. The Bevericks did not object to the trial court's subsequent order, which included dismissal of those defendants. The Bevericks waived their claims against these parties, and we decline to address them on appeal.

### Deeds of Trust Act Claims

The Bevericks raise several claims under the deeds of trust act against Nationstar and WMC for the first time on appeal. The Bevericks did not raise these arguments below, either in their complaint or in their oppositions to summary judgment. We decline to reach these arguments. RAP 2.5(a).

### Summary Judgment

The Bevericks argue that the trial court erred in granting the summary judgment motions of Nationstar Mortgage and WMC, which together dismissed all of their claims against Nationstar and WMC and issued a decree of foreclosure in favor of Nationstar Mortgage. They argue that the grant of summary judgment and issuance of a decree of foreclosure was improper because genuine issues of material fact remained whether the note offered by Nationstar Mortgage at the summary judgment hearing was the original note, whether U.S. Bank had the status and standing to judicially foreclose on the note, and whether Nationstar and WMC violated the CPA. We examine each claim in turn.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits . . . show that there

9

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A fact is material if the outcome of the litigation depends on it in whole or in part. Swinehart v. City of Spokane, 145 Wn. App. 836, 844, 187 P.3d 345 (2008).

If the moving party carries its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute. Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989). The nonmoving party must offer more than conclusory statements and establish specific and material facts with evidence to survive summary judgment. Hiatt v. Walker Chevrolet, 120 Wn.2d 57, 66-67, 837 P.2d 618 (1992).

Summary judgment orders are reviewed de novo, and the appellate court performs the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The reviewing court examines the pleadings, affidavits, and depositions before the trial court and assumes all reasonable inferences in favor of the nonmoving party. Ruff v. King County, 125 Wn.2d 697, 703, 887 P.2d 886 (1995).

*Competence of Evidence*

The Bevericks argue that the trial court erred when it relied on the testimony of Loll, Hughes, and McCann, offered by Nationstar Mortgage in support of its motion for summary judgment to show that it was the holder of the note and had authority to foreclose. Because the declarants testified to facts that would have been admissible at trial and that were based on their personal knowledge, we find no error.

"Affidavits submitted in support of or in response to a motion for summary judgment must set forth such facts as would be admissible in evidence, must be made on personal

knowledge, and must affirmatively show that the affiant is competent to testify as to his or her averments." Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2003) (citing CR 56(e); Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 753 P.2d 517 (1988)). Sworn or certified copies of any documents referred to in an affidavit must be attached to the affidavit. CR 56(e).

Personal knowledge may be established by the affiant's declaration under penalty of perjury that his or her testimony is based on personal knowledge and review of relevant records. Barkley v. Greenpoint Mortg. Funding, Inc., 190 Wn. App. 58, 66-67, 358 P.3d 1204 (2015) (quoting CR 56(e); RCW 5.45.020), review denied, 184 Wn.2d 1036, 379 P.3d 953 (2016).

A business record may be competent evidence if "the custodian or other qualified witness testifies to its identity and the mode of its preparation," if it was made in the regular course of business at or near the time of the event at issue, and if the court determines that the sources of information, method, and time of preparation justify admission. RCW 5.45.020.

"Reviewing courts broadly interpret the statutory terms 'custodian' and 'other qualified witness.'" State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004) (citing State v. Ben-Neth, 34 Wn. App. 600, 603, 663 P.2d 156 (1983)). A person who has custody of the record as a regular part of his or her work or has supervision of its creation is qualified to testify as a custodian. Quincy, 122 Wn. App. at 399. Computerized records that meet the statutory requirements are treated as any other business records. Ben-Neth, 34 Wn. App. at 603 (citing Seattle v. Heath, 10 Wn. App. 949, 520 P.2d 1392 (1974)).

When a motion for summary judgment is made and supported pursuant to CR 56(e), the adverse party must respond with specific facts showing there is a genuine issue for trial. CR 56(e). The party opposing an affidavit cannot argue simply that the affiant's statements of personal knowledge are "'conclusory'"; it must submit facts that create a genuine issue of material fact as to the qualifications of the affiant, his or her statements, or the authenticity of the attached documents. Barkley, 190 Wn. App. at 67-68.

This court reviews a summary judgment order de novo. Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). The de novo standard applies to evidentiary rulings on admissibility. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

The Bevericks argue that the affidavit of Loll and the declaration of McCann did not contain facts that would have been admissible at trial. But the facts contained in the affidavit and the declaration qualify as business records under RCW 5.45.020. Both Loll and McCann stated that (1) they were officers of Nationstar Mortgage and Aurora's successor entity, respectively; (2) they had personal knowledge of their company's practice of maintaining business records; (3) they had personal knowledge of the Bevericks' loan documents from their personal review of the documents or through another qualified person's review of the documents; and (4) attached true and correct copies of the documents they relied upon to their affidavit and declaration. The affidavit of Loll and the declaration of McCann contained facts that would have been admissible at trial under RCW 5.45.020.

The Bevericks also challenge the trial court's reliance on the affidavit of Loll and the declarations of McCann and Hughes under CR 56(e) as failing to demonstrate personal knowledge and competency.

Loll stated under oath that he or she is over 18 years of age and competent to be a witness in any trial on this matter, and that he or she reviewed Nationstar Mortgage's business records, was familiar with Nationstar Mortgage's recordkeeping system, and incorporated by reference the note, deed of trust, and assignment of deed of trust at issue. Hughes declared under oath that he is over the age of 18 and competent to testify, and that Nationstar Mortgage gave him the original note and deed of trust on June 14, 2013. He attached true and correct copies of both to his declaration, and planned to make the originals available to the court at the summary judgment hearing. McCann declared under oath that she was Vice President of Aurora Commercial Corp. and had reviewed Aurora's records showing its possession of the note and when Aurora transferred the note.

The Bevericks offer only conclusory challenges to each declarant's personal knowledge and competency. They argue that Loll failed to provide third-party verification of the documents, Hughes failed to show how he knew the documents provided by Nationstar Mortgage were the original note and deed of trust, and, generally, that McCann has not sufficiently established personal knowledge. Such arguments are insufficient to create a genuine issue of material fact.

In sum, the Bevericks have failed to carry their burden of showing that the trial court erred by considering the affidavit of Loll and the declarations of Hughes and McCann under RCW 5.45.020 or CR 56(e). The affidavit of Loll and the declaration of McCann

contained facts admissible under RCW 5.45.020. All three declarants established their personal knowledge and competence to testify under CR 56(e). The trial court did not err by considering the affidavit, the declarations, and the attached documents.

*Authenticity of Offered Original Note*

The Bevericks argue that the trial court erred in granting summary judgment and a decree of foreclosure in favor of Nationstar Mortgage as the holder of the original note because there was a genuine issue of material fact whether the document offered at summary judgment was the original note or a counterfeit. Because the Bevericks failed to timely respond to Nationstar Mortgage's RFAs to deny the authenticity or validity of the offered note, we disagree.

A party may serve any other party a written RFA for purposes of the pending action, "including the genuineness of any documents described in the request." CR 36(a). The party to whom the RFA is directed must serve a written answer or objection within 30 days after service of the RFA. CR 36(a). Failure to do so results in the matter being admitted. CR 36(a).

Nationstar Mortgage sent the Bevericks RFAs in December 2013, which asked in part that they "[a]dmit that Your original signatures were on the note produced in Court at the September 30, 2013, summary judgment hearing in this matter," and "[a]dmit that Your original signatures were on the Note produced for Your and Your counsel's review at the offices of [Hughes] in Seattle, Washington, on September 30, 2013."[5]

The Bevericks did not reply to the RFAs within 30 days of service. They waited to respond until January 5, 2015, when they filed a motion to extend time to answer the

_____

[5] CP at 413-14) (boldface omitted).

RFAs. The trial court denied the extension. Under CR 36(a), the Bevericks are deemed to have admitted to the authenticity of the note produced at the September 30 summary judgment hearing. Thus, they cannot challenge it via Michael Beverick's affidavit.

*Status and Standing to Judicially Foreclose on the Note*

The Bevericks argue that there was a genuine issue of material fact whether U.S. Bank was the owner of the note and had standing to judicially foreclose as a mortgagee of the obligation. Specifically, they argue that, although Nationstar Mortgage identified itself as the current holder of the obligation, Nationstar Mortgage failed to establish that it was the mortgagee or his or her assigns under RCW 61.12.040 or that U.S. Bank had standing as owner and holder of the subject obligation. We disagree. Nationstar Mortgage is a proper party to foreclose because it is the holder of the note.

Only certain parties are entitled to foreclose on a mortgage in default. "When default is made in the performance of any condition contained in a mortgage, the mortgagee or his or her assigns may proceed in the superior court of the county where the land, or some part thereof, lies, to foreclose the equity of redemption contained in the mortgage." RCW 61.12.040. Under Washington law, a "[p]erson entitled to enforce" an instrument includes:

> (i) the *holder* of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder. . . . A person may be a person entitled to enforce the instrument even though the person is not the *owner* of the instrument or is in wrongful possession of the instrument.

RCW 62A.3-301 (emphasis added).

"'The *holder* of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument.'" Deutsche Bank Nat'l Trust Co. v. Slotke, 192 Wn. App. 166, 172, 367 P.3d 600 (2016) (quoting John Davis & Co. v.

Cedar Glen No. Four, Inc., 75 Wn.2d 214, 222-23, 450 P.2d 166 (1969), review denied, 185 Wn.2d 1037, 377 P.3d 746 (2016). "'It is not necessary for the holder to first establish that he has some beneficial interest in the proceeds.'" Slotke, 192 Wn. App. at 172 (quoting John Davis & Co, 75 Wn.2d at 222-23). "Under the [Uniform Commercial Code (UCC)], the 'holder' of the note entitled to commence a judicial foreclosure is 'the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" Slotke, 192 Wn. App. at 175 (citing RCW 62A.1-201(b)(21)(A)).[6]

A party may establish its status as a holder through possession of a promissory note indorsed by the original payee and maintenance of possession throughout a judicial foreclosure action. Slotke, 192 Wn. App. at 175. Presentation of the original note for inspection by the court at a summary judgment hearing can be sufficient to prove a party's status as holder through possession. Slotke, 192 Wn. App. at 175.

Here, the record shows that WMC transferred physical possession of the note, indorsed in blank, to Aurora in December 2011. In July 2012, Aurora transferred the note to Nationstar Mortgage. Nationstar Mortgage presented the original note at the September 30, 2013 summary judgment hearing for inspection by the trial court. The record does not show that Nationstar Mortgage has transferred the note during the foreclosure proceedings. Therefore, Nationstar Mortgage is the current holder of the note and is a proper party to foreclose.

The Bevericks raise several arguments against Nationstar Mortgage's ability to foreclose. First, they argue that Nationstar Mortgage could not foreclose on the note

---

[6] The UCC was adopted in Washington as chapter 62A RCW.

because it did not establish its ownership interest in the deed of trust or note. This ignores that a party need only be the holder of the instrument, not the owner of the obligation, to be entitled to foreclose. They next argue that there were genuine issues of material fact whether Nationstar Mortgage had a proper power of attorney to act on behalf of U.S. Bank and whether Nationstar Mortgage was acting as U.S. Bank's agent. Similarly, this ignores that a party's status as holder is dispositive to the issue of whether it can foreclose on the obligation. Nationstar Mortgage's relationship with U.S. Bank is irrelevant.

In sum, the Bevericks have not raised sufficient evidence to create a genuine issue of material fact regarding Nationstar Mortgage's status of holder of the note. The trial court did not err in determining that Nationstar Mortgage was a proper party to foreclose on the note.

*Violation of the Consumer Protection Act*

The Bevericks argue that the trial court erred in granting summary judgment to Nationstar and WMC on their CPA claim. They argue that there were genuine issues of material fact whether WMC's designation of MERS as the beneficiary of the deed of trust and Nationstar Mortgage and Aurora's improper initiation of a non-judicial foreclosure constituted deceptive and unfair acts or practices.[7] We disagree. The Bevericks have not offered sufficient additional facts to show a genuine issue of material fact that WMC's designation of MERS was a deceptive or unfair act or practice. They have also failed to show facts establishing a genuine issue of material fact whether Nationstar Mortgage and Aurora lacked the authority to non-judicially foreclose on the note.

---

[7] The Bevericks also raise several arguments for violation of the deeds of trust act in support of their CPA claim for the first time on appeal. We decline to reach these alleged bases. RAP 2.5(a).

17

To maintain a claim under the CPA, a plaintiff must show "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The CPA is liberally construed in light of its beneficial purposes. RCW 19.86.920.

The Bevericks argue that there is a genuine issue of material fact whether WMC engaged in unfair or deceptive acts or practices through its designation of MERS as a beneficiary in the deed of trust.

Designation of MERS as the beneficiary may be deceptive, and presumptively satisfies the first element of a CPA claim when MERS acts as a beneficiary. Bain v. Metro. Mortg. Grp., 175 Wn.2d 83, 115-17, 285 P.3d 34 (2012). But designation of MERS as a beneficiary alone is insufficient to show an unfair or deceptive business practice. Bain, 175 Wn.2d at 120; see also McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 224, 229-232, 370 P.3d 25 (2016) (although MERS was named as beneficiary in deed, plaintiff did not allege sufficient other facts to establish a claim of violation of the deeds of trust act or CPA).[8]

The Bevericks did not have any interaction or contact with WMC following the signing of the note. The Bevericks have stated that WMC did not make any misrepresentations to them. The Bevericks argue that MERS took actions that

---

[8] WMC also cites Zalac v. CTX Mortg. Corp., 2013 WL 1990728 (W.D. Wash. May 13, 2013). In Zalac, the court stated that "Bain only held that characterizing MERS as the beneficiary on a deed of trust has the capacity to deceive . . . but does not by itself constitute a per se violation of the CPA. Unlike the 'concealment' by MERS at issue in Bain, here, Plaintiff does not allege any specific unfair deceptive act by MERS. . . . Instead, Plaintiff routinely received written notification regarding which entity was servicing his loan and had no communication with MERS." Zalac, 2013 WL 1990728, at *3 (citations omitted).

constituted unfair or deceptive business practices. But they do not show how these acts are attributable to WMC. Further, they have not alleged any action of WMC that constituted an unfair or deceptive business practice beyond naming MERS as the beneficiary of the deed of trust. Under Washington law, the Bevericks have not alleged sufficient facts to show that WMC engaged in unfair or deceptive business practices.

The Bevericks next argue that Nationstar Mortgage and Aurora engaged in unfair and deceptive business practices when they improperly initiated a non-judicial foreclosure without proper authority.

The Bevericks argue that Nationstar improperly relied on the affidavit of Loll and the declarations of McCann and Hughes to contend that they were the servicers and proper beneficiaries of the deed of trust. As discussed above, the affidavit of Loll and the declarations of McCann and Hughes met the requirements of CR 56(e), ER 801, and ER 802. Therefore, the Bevericks do not allege other facts showing that Nationstar Mortgage and Aurora were not the servicers or proper beneficiaries of the deed of trust.

The Bevericks further argue that Nationstar did not establish that it was an agent of U.S. Bank, the purported owner of the obligation, entitled to foreclose on the note. As discussed above, Nationstar Mortgage was the holder of the note and therefore was entitled to foreclose on it. Ownership of the obligation and the relationship between the owner and holder is irrelevant.

In sum, the Bevericks have not offered sufficient facts to show that Nationstar or WMC engaged in unfair or deceptive business practices. Because they have not satisfied this element, we need not examine the other elements of their CPA violation claim. The

trial court did not err in dismissing the Bevericks' CPA violation claim against Nationstar or WMC.

Affirmed.

Trickey, ACJ

WE CONCUR:

Appelwick, J                          Cox, J.

20